Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

District of Delaware

Civil Division

|  |  |  |
|---|---|---|
| **JAY BRODSKY** | ) | Case No. 19 - 1049 |
|  | ) | *(to be filled in by the Clerk's Office)* |
|  | ) | 19 - 1049 |
| *Plaintiff(s)* | ) |  |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)*  ☑ Yes  ☐ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |  |
| *please write "see attached" in the space and attach an additional* | ) |  |
| *page with the full list of names.)* | ) |  |
| **-v-** | ) |  |
| FIRST AMERICAN TITLE INSURANCE COMPANY | ) |  |
| TITLE-VEST AGENCY, LLC. | ) |  |
| FIRST AMERICAN TITLE COMPANY OF NEW | ) |  |
| YORK | ) |  |
| *Defendant(s)* | ) |  |
| *(Write the full name of each defendant who is being sued. If the* | ) |  |
| *names of all the defendants cannot fit in the space above, please* | ) |  |
| *write "see attached" in the space and attach an additional page* | ) |  |
| *with the full list of names.)* | ) |  |

## COMPLAINT FOR A CIVIL CASE

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Jay Brodsky |
| Street Address | 240 East shore Road, #444 |
| City and County | Great Neck        Nassau County |
| State and Zip Code | New York        11023 |
| Telephone Number | (973) 568-1666 |
| E-mail Address | demcointerexport@yahoo.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | First American Title Insurance Company |
| Job or Title *(if known)* | |
| Street Address | 1 First American Way |
| City and County | Santa Ana          Orange County |
| State and Zip Code | California.        92707 |
| Telephone Number | 714-800-3000 |
| E-mail Address *(if known)* | www.firstam.com/title |

Defendant No. 2

| | |
|---|---|
| Name | First American Title Insurance Company of New York |
| Job or Title *(if known)* | |
| Street Address | 666 3rd Avenue, 5th Floor |
| City and County | New York          New York County |
| State and Zip Code | New York          10017 |
| Telephone Number | (800) 437-1234 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | TitleVest Agency, LLC. |
| Job or Title *(if known)* | |
| Street Address | 110 East 42nd Street, 10th Floor |
| City and County | New York          New York County |
| State and Zip Code | New York          10017 |
| Telephone Number | (800) 437-1234 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Does' 1 through 5 |
| Job or Title *(if known)* | |
| Street Address | unknown |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

        The plaintiff, *(name)*  Jay Brodsky                          , is a citizen of the
        State of *(name)*  New York                          .

    b.    If the plaintiff is a corporation

        The plaintiff, *(name)*                          , is incorporated
        under the laws of the State of *(name)*                          ,
        and has its principal place of business in the State of *(name)*

                                  .

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

        The defendant, *(name)*                          , is a citizen of
        the State of *(name)*                          . Or is a citizen of
        *(foreign nation)*                          .

    b.    If the defendant is a corporation

The defendant, *(name)* First American Title Insurance Co. , is incorporated under the laws of the State of *(name)* Delaware , and has its principal place of business in the State of *(name)* California .

Or is incorporated under the laws of *(foreign nation)* ,

and has its principal place of business in *(name)* .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:
$7,000,000+

## III.  Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.
See attached complaint

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.
see attached complaint

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

---

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:              May 23, 2019

Signature of Plaintiff        
Printed Name of Plaintiff     Jay Brodsky

### B.    For Attorneys

Date of signing:              

Signature of Attorney         
Printed Name of Attorney      
Bar Number                    
Name of Law Firm              
Street Address                
State and Zip Code            
Telephone Number              
E-mail Address

Jay Brodsky
240 East Shore Road, #444
Great Neck, NY 11023
Telephone: (973) 568-1666
E-mail: demcointerexport@yahoo.com
Plaintiff ProSe on Behalf of Himself


Case No._____

# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE


**THE MATTER OF:**

<u>JAY BRODSKY</u>
**PLAINTIFF**

                              *-against-*


FIRST AMERICAN TITLE
INSURANCE COMPANY
a/k/a First American Financial Corporation
TITLEVEST AGENCY, LLC
FIRST AMERICAN TITLE COMPANY
NEW YORK
<u>DOE'S 1 through 5 *et al*</u>
**DEFENDANTS'**

**Issues Before The Court**:
Fraud in the Conveyance of Real
Property
Fraud in the Concealment of
Conveyance of  Real Property
Deceptive and Unlawful Business
Practices
NY Gen. Bus. Law § 349
NY Exec. Law § 63(1)
Common Law Fraud
Conspiracy
(RICO) 18 U.S.C. § 1961 *et seq.*,
18 U.S.C. § 1341
18 U.S.C. § 1343
18 U.S.C.  § 1028A


# VERIFIED COMPLAINT TO SET ASIDE FRAUDULENT CONVEYANCE
# OF REAL PROPERTY AND FOR DAMAGES; CONSPIRACY

**COME NOW**, Jay Brodsky, hereafter known as, 'PLAINTIFF' by

and through his own self representation and for his cause of action against

the Defendants herein, states and alleges as follows:

## I.    JURISDICTION, VENUE AND JURY REQUEST

1.    This Court enjoys subject matter jurisdiction over this action under,

28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of

different states and the amount in controversy exceeds $75,000.

2.    This Court enjoys personal jurisdiction over the Defendants because,

'FIRST AMERICAN TITLE COMPANY,' a subsidiary of, 'FIRST

AMERICAN FINANCIAL CORPORATION,' hereafter known as,

'FIRST AMERICAN,' is a registered DELAWARE Corporation and as such

is governed by, and must be construed in accordance with, the laws of the

State of Delaware; 'FIRST AMERICAN conducts business nationwide from

its headquarters in Santa Ana, California; TitleVest Agency, LLC is a

national title insurance agency, acquired by, 'FIRST AMERICAN,'

headquartered on Wall Street in New York, New York; The incident where

the alleged transgression took place is BROOKLYN, NEW YORK and the

'Plaintiff-Target' is a resident of New York State.

3.  This Court enjoys venue under 28 U.S.C. § 1391(a)(2) because all or a

    substantial portion of the events that gave rise to Plaintiffs' claims transpired

    in this courts jurisdiction, including but not limited to, Fraud in the

    Conveyance of Real Property, Fraud in the Concealment of Conveyance of

    Real Property, Deceptive and Unlawful Business Practices, NY Gen. Bus.

    Law § 349, NY Exec. Law § 63(1), (RICO) 18 U.S.C. § 1961 *et seq.*, 18

    U.S.C. § 1341, 18 U.S.C. § 1343 Intentional Infliction of Emotional

    Distress, Conspiracy and Common Law Fraud, 18 U.S.C. § 1028(a).

## II.            JURY DEMAND

4.  Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of

    the Federal Rules of Civil Procedure.

## III.           THE PARTIES

**Plaintiff:**

5.  JAY BRODSKY, 240 East Shore Road, #444, Great Neck, New York 11023;

**Defendants:**

6.  FIRST AMERICAN TITLE COMPANY, FIRST AMERICAN FINANCIAL

    CORPORATION, 1 First American Way, Santa Ana, California 92707;

7. FIRST AMERICAN TITLE COMPANY OF NEW YORK, 666 3rd Avenue,

  5th floor, New York, NY 10017;

8. FIRST AMERICAN FINANCIAL CORPORATION, 1 First American Way,

  Santa Ana, California 92707;

9. TITLE-VEST AGENCY, LLC., 110 East 42nd Street, 10th Floor, New York,

  New York 10017; 550 Mamaroneck Avenue, Suite 401, Harrison, NY 10528;

  4440 PGA Boulevard, Suite 600, Palm Beach Gardens, FL 33410; 100

  Crescent Court, Suite 700, Dallas, TX 75201;

10. DOES' (1) through (5) Plaintiff is presently unable to confirm which of,

  'FIRST AMERICANs' wholly owned subsidiaries and/or affiliated

  companies; DOES' (1) through (5) are liable for the claims asserted herein.

  Discovery will allow Plaintiff to proceed with naming additional, 'FIRST

  AMERICAN' affiliated and owned companies. Other persons identities

  included in DOES' (1) through (5), whose identities are unknown to Plaintiff

  participated in the events alleged herein which give rise to the claims

  asserted by Plaintiff.

## IV. <u>GENERAL BACKGROUND</u>

11. Plaintiff is a natural born disabled citizen of the United States **[Exhibit #1]**.

12.   'FIRST AMERICAN,' is a United States financial services company and is a

      leading provider of title insurance and settlement services to the real estate

      and mortgage industries.

13.   'FIRST AMERICANs' family of companies' core business lines include title

      insurance and closing/settlement services; title plant management services;

      title and other real property records and images; valuation products and

      services; home warranty products; property and casualty insurance; and

      banking, trust and investment advisory services throughout the United

      States.

14.   With total revenues of $5.8 billion in 2017, the company offers its products

      and services directly and through its agents throughout the United States

      (including New York) and abroad.

15.   'FIRST AMERICAN' offers its products and services directly and through

      its agents and partners nationwide and in more than 40 countries (First

      American Title Insurance Company of New York).

16.   In June 2010, 'FIRST AMERICAN' was established when it split its

      businesses to create two separate legal entities, 'FIRST AMERICAN

      FINANCIAL CORPORATION,' which provides title and financial services

and 'CORE-LOGIC INC.,' which provides information solutions and

analytics services to the real estate and mortgage industry.

17.   'FIRST AMERICAN' provides title insurance protection and professional

settlement services for homebuyers and sellers, real estate agents,

homebuilders and developers, title agencies and legal professionals to

facilitate real estate purchases, construction, refinances or equity loans.

18.   'TITLE-VEST COMPANY, LLC' is a national title insurance agency

headquartered on Wall Street in New York, New York.  The company offers

a wide range of property and title-related services and handles all transaction

types, from large commercial transactions to residential purchases and

mortgage refinances.  In March 2015, 'TITLE-VEST' was acquired by

'FIRST AMERICAN.'

## V.        **FACTUAL BACKGROUND**

19.   Plaintiff, is a natural born citizen who resides in the United States.

20.   Bob Brodsky (deceased), husband to Shirley Brodsky (deceased) and father

of two children of which Plaintiff is a son and Sandi Ingber is a daughter.

21.   Decedent, Bob Brodsky allegedly died of natural causes on <u>January 9, 2013</u>.

22.   Bob Brodsky, hereafter known as, 'BB' and Plaintiff had jointly owned a

      business, 'COASTAL INTERNATIONAL, INC.,' hereafter known as,

      'COASTAL' [Exhibit #2] from 1984 until dissolution by proclamation in

      1992.  Various other business names succeeded 'COASTAL' until 2013,

      however ownership remained the same (National Parts, 711 Auto Parts, TransCom,

      etc.).

23.   Beginning in 1973, Bob Brodsky and Plaintiff, a/k/a, 'PARTNERs,'

      jointly owned a used auto parts business by the same name, 'COASTAL'

      (partnership).  Income tax returns [Exhibit #3] reflecting the Partners joint

      ownership of 'COASTAL' established ownership at [50% Bob Brodsky -

      50% Jay Brodsky].

24.   In 1980, after the 'PARTNERs' achieved success, jointly purchased a

      commercial property (warehouse), '730 CHESTER STREET, BROOKLYN,

      NEW YORK' [Block 3642/Lot 49/County of Kings][Exhibit #14], hereafter

      known as '730 CHESTER.'

25.   Shortly thereafter in 1981, after achieving further success, the 'PARTNERs'

      expanded the business by jointly purchasing a second commercial property

      known as, 711 CHESTER STREET, BROOKLYN, NEW YORK

(warehouse) **[Block 3643/Lot 19/County of Kings]**, hereafter known as,

'711 CHESTER.'

26.   In order to protect both commercial properties the 'PARTNERs' legally

formed a shell c-corporation known as, 'BOB SHIRLEY REALTY

CORPORATION,' hereafter known as, 'BOB-SHIRL' which was

predeceased by an earlier iteration, 'JASAN REALTY CORPORATION.'

**[Exhibit #14]**

27.   'BOB-SHIRL,' was established as a shell corporation, having no material

assets other than the value of the two commercial properties, '730

CHESTER' and '711 CHESTER.'  'BOB-SHIRL' never applied for, nor was

awarded a Federal or New York State, [1]Employer Identification Number

(EIN), never established a bank checking or savings account, never filed a

Federal or New York State tax return and appointed only two officers, the

'PARTNERs' with equally shared distribution of stock **[Exhibit #14]**.

28.   '730 CHESTER' had been purchased from, 'ZAM REALTY, INC.,'

hereafter known as, 'ZAM.'  The 'PARTNERs' jointly tendered a cash down

---

[1] The **Employer Identification Number (EIN)**, also known as the **Federal Employer
Identification Number (FEIN)** or the **Federal Tax Identification Number**, is a unique nine-digit
number assigned by the Internal Revenue Service (IRS) to business entities operating in the
United States for the purposes of identification.

payment to 'ZAM,' owned by, 'JOSEPH ZAMBUTO, hereafter known as,'

'ZAMBUTO,' with the balance of the purchase price self mortgaged by

'ZAMBUTO' for a period of ten years.  Shortly thereafter a proposal was

proffered to the 'PARTNERs' by 'ZAMBUTO,' to satisfy the balance of the

mortgage prematurely in lieu of a discount **[Exhibit #4]** with one material

caveat, pecuniary remuneration was to be tendered in cash. The'PARTNERs'

agreed to 'ZAMBUTOs' terms.  With the mortgage duly satisfied, the

property was fully conveyed to the 'PARTNERs' corporation, 'BOB-SHIRL'

free from any and all encumbrances at 50% (Jay Brodsky)-50% (Bob

Brodsky) **[Exhibit #4]**.  All funds tendered to 'ZAMBUTO' had been derived

from, 'COASTAL' (partnership) and later from, 'COASTAL' (corporation)

the 'PARTNERs' jointly owned business **[Exhibit #5]**.

29. The property known as, '711 CHESTER' was jointly purchased by the

'PARTNERs' in 1981, from, 'MORRIS and BEATRICE SILVERMAN,'

hereafter known as 'SILVERMANs' for, 'ONE-HUNDRED THOUSAND

DOLLARS' ($100,000.00).  The 'PARTNERs' tendered a cash down

payment totaling, 'FIFTY-THOUSAND DOLLARs' ($50,000.00) with the

balance held as a self mortgage by the, 'SILVERMANs.'  Over the next ten

years the mortgage was dutifully satisfied after tendering monthly payments,

$833.33.  Mortgage payments were derived from both, 'COASTAL' **[Exhibit**

**#5]** (partnership) until 1984, then from 'COASTAL' (corporation) **[Exhibit**

**#2].**  The legal work required to effectuate the purchase of '711 CHESTER'

and to incorporate 'COASTAL' was done by the 'PARTNERs' attorney,

[2]'Mr. ALAN LEBENSFELD, ESQ.,' who currently practices law in, 'RED

BANK, NEW JERSEY.'  Upon full satisfaction of the mortgage for, '711

CHESTER' the property was conveyed to 'BOB-SHIRL' free of all

encumbrances at 50% (Jay Brodsky) -50% (Bob Brodsky) **(transcript of**

**Lebensfeld deposition April, 2016 forthcoming at trial).**

## VI.          SUBSTANTIVE ALLEGATIONS

30.    On the 12th day of August, 2010, 'BOB BRODSKY,' hereafter known as,

'BB' took part in a conspiracy with Does [1] through [5], to defraud,

deprive, delude, cheat and/or embezzle real property, '730 CHESTER' and

'711 CHESTER' belonging to Plaintiff.  'BB' surreptitiously and with

malice, conveyed two (2) parcels of real property **(730 & 711 Chester Street)**

from, 'BOB-SHIRL', to 'BOB BRODSKY,' thereby failing to inform

---

[2] Lebensfeld, Alan M - Lebensfeld Borker & Sussman (Lawyers) is practicing law in Red Bank, New Jersey—Was deposed in 2016 at his office.

Plaintiff that the unlawful act of conveyance had been effectuated [**Exhibit**

**#6**][**Exhibit #7**].

31.     'BB' was a severe [3]alcoholic, consuming one liter or more of Vodka

([4]Smirnoff) or Gin ([5]Gordons) per day.

32.     Consuming excessive amounts of alcohol caused 'BB,' to metastasize from a

rational human being into a violent caricature of himself.  Licensed by the

City of New York to carry a concealed handgun, 'BB' always had a [6]Smith

and Wesson snub nose 38 caliber revolver at his side.

33.     In 1999, after consuming nearly a liter of Smirnoff Vodka, 'BB'

transgressed into a monster.  For no apparent reason other than his highly

[7]intoxicated imagination, 'BB' withdrew the handgun from his person,

aimed the weapon at Plaintiff and asserted in no uncertain terms, 'I'm going

---

[3] **Alcoholism**, also known as **alcohol use disorder (AUD)**, is a broad term for any drinking of
alcohol that results in mental or physical health problems

[4] **Smirnoff** (/ˈsmɪərnɒf/; Russian: [smʲɪrˈnof]) is a brand of vodka owned and produced by the
British company Diageo. The Smirnoff brand began with a vodka distillery founded in Moscow
by Pyotr Arsenievich Smirnov (1831–1898)

[5] **Gordon's** is a brand of London dry gin first produced in 1769. The top markets for Gordon's
are (in descending order) the United Kingdom, the United States and Greece.[1] It is owned by
the British spirits company Diageo and, in the UK, is made at Cameron Bridge Distillery in Fife,
Scotland

[6] **Smith & Wesson (S&W)** is an American manufacturer of firearms, ammunition and restraints.

[7] The Hazelden Betty Ford Foundation is a force of healing and hope for individuals, families
and communities affected by addiction to alcohol and other drugs. As the nation's leading
nonprofit provider of comprehensive inpatient and outpatient treatment for adults and youth

to kill you.' Sensing an existential threat to his well being, Plaintiff

withdrew form '711 CHESTER' to report the incident to the police at the

[8]75th Precinct, Brooklyn, New York.  Overhearing Plaintiffs' official

statement, the Captain in charge of the precinct ordered his officers to arrest

and charge 'BB' with, '[9]assault with a deadly weapon.'  Feeling uneasy,

prompted Plaintiff to request that the police acquiesce from arresting his

father.  After some lively debate, the Captain relented but still insisted on

removing the firearm and license to carry a concealed firearm from 'BB.'

34.   After careful consideration and still fearing for his life, Plaintiff decided it

was best to maintain a safe distance from 'BB' in order to insure that he

would not become a statistic.  A quiet agreement was reached between the

'PARTNERs' establishing that Plaintiff would remain a partner in the

business and real property however from that point on operate the same

business from another location in, The Bronx, New York (730 Whittier

---

[8] **75th Police Precinct Station House** is a historic police station located at Brooklyn in New
York, New York. It was built in 1886 and is a three-story, yellow brick building above a
sandstone foundation and watertable in the Romanesque Revival style

[9] When one person engages another using a deadly weapon, they have committed assault with
a deadly weapon. In this situation, the victim does not need to experience serious physical
harmed by the weapon: it could have been used to threaten them. The victim only needs to
believe they are going to experience imminent serious harm.

Street).  All business operations remained unchanged but the daily

responsibilities of the 'PARTNERs' differed thereafter.

35.   At no time before, during or after the assault directed towars Plaintiff by

'BB,' did the ownership of the business or the ownership of the real estate

by the 'PARTNERs' change hands in any fashion.  There had been no

concessions or abrogations by either party to denounce each 'PARTNERs'

rightful ownership of the business, 'COASTAL,' or any other business entity

established thereafter or have any affect on real estate owned by the

'PARTNERs' which had been purchased entirely with corporate (Business)

funds [Exhibit #5].

36.   Following 'BBs' death (January 9, 2013), a, 'Last Will and Testament,'

[Exhibit #8] was disclosed, which prior to 'BBs' death was unknown to

Plaintiff. (until February, 2013).  In order to ascertain the exact contents of

'BBs,' 'Last Will and Testament,' Plaintiff employed the services of an

attorney, 'HARRY BRAUNSTEIN,' Jericho, New York.  'BRANSTEIN'

had several conversations with 'BBs,' "Wills and Estate" attorney,

'MICHAEL ANGUILO' only to discover that, 'BB' had disinherited

Plaintiff from his estate [Exhibit #9].  Shortly thereafter, further discussions

were reestablished by a second attorney, RICHARD LIBRETT, Esq. Garden

City, New York [Exhibit #10] who further represented Plaintiff.

37.    Plaintiff was perplexed when he discovered that, 'BB' had illegally

conveyed the jointly owned properties, '730 CHESTER' and '711

CHESTER,' to the, BOB BRODSKY REVOCABLE TRUST [Exhibit #11].

38.    During a Surrogates Proceeding adjudicated at the Surrogates Court, Queens

County New York; commencing in April 2013 and ending, June, 2016,

certain documents were compelled by Plaintiff through a court ordered,

'Subpoena Duces Tecum,' which was served upon the Executrix, Sandi

Ingber (Plaintiffs' sister), to dispute the contents of 'BBs,' 'Last Will and

Testament' [Exhibit #12].

## VII.    **STATUTE OF LIMITATIONS**

39.    Dorothy M. Faison, etc. v Tonya Lewis, etc., 26 NY3d 946, 2015 N.Y.

LEXIS 2540, 17 NYS3d 63, 38 NE3d 806 (N.Y., Sept. 3, 2015), 'Under the

Court of Appeals of New York's case law, a forged deed is '*Void ab Initio*,'

meaning a legal nullity at its inception. As such, any encumbrance upon real

property based on a forged deed is null and void;' 'A forged deed lacks the

voluntariness of conveyance. Therefore, it holds a unique position in the

law; a legal nullity at its creation is never entitled to legal effect because

void things are as no things.'

40.    New York's recording statute, <u>Real Property Law § 291</u>, does not apply to a

forged deed. Neither can recording a forged deed transform it into a

document with legal authority to establish a valid property interest, for it

does not change the legal rights of anyone. The fact that a false and

fabricated writing of this character is deposited in a public office for record,

and is actually recorded, can add, 'nothing to its legal efficacy.' The

recording statute applies to genuine instruments and not to forged ones.

41.    A claim against a forged deed is not subject to a statute of limitations

defense. A forged deed is void, not merely voidable. That legal status cannot

be changed, **regardless of how long it may take for the forgery to be**

**uncovered**. A statute of limitations does not make an agreement that was

void at its inception valid by the mere passage of time, (*Symbol Tech., Inc. v*

*Deloitte &Touche, LLP*, 69 AD3d 191, 888 NYS2d 538; *Riverside*

*Syndicate, Inc. v Munroe*, 10 NY3d 18, 882 NE2d 875, 853 NYS2d 263;

*Marden v Dorthy*, 160 NY 39, 54 NE 726; *Yin Wu v Wu*, 288 AD2d 104, 733

NYS2d 45; *Karan v Hoskins*, 22 AD3d 638, 803 NYS2d 666; *Kraker v Roll*,

100 AD2d 424, 474 NYS2d 527; *Rosen v Rosen*, 243 AD2d 618, 663

NYS2d 228; *Matter of Rothko*, 43 NY2d 305, 372 NE2d 291, 401 NYS2d

449; *Diocese of Buffalo v McCarthy*, 91 AD2d 213, 458 NYS2d 764; *3636*

*Greystone Owners, Inc. v Greystone Bldg. Co.*, 51 AD3d 461, 857 NYS2d

121.)(*Perry v Williams*, 40 Misc 57, 81 NYS 204; *Nash v Duroseau*, 39

AD3d 719, 835 NYS2d 611; *527-9 Lenox Ave. Realty Corp. v Ninth St.*

*Assoc.*, 200 AD2d 531, 606 NYS2d 699; *County of Tioga v Solid Waste*

*Indus.*, 178 AD2d 873, 577 NYS2d 922.)

## VIII.          COUNT ONE
## FRAUDULENT CONVEYANCE OF CORPORATE SHARES
### New York Real Property Law § 299
### New General Business Law 1104(a)

42.   Plaintiff re-alleges and incorporates the foregoing allegations as set forth

herein this Complaint.

WHEREFORE, Plaintiff brings this proceeding on behalf of himself.

43.   Both '711 CHESTER' and '730 CHESTER,' two (2) commercial warehouse

properties, had been jointly purchased by the 'PARTNERs' in 1980 and 1981

respectively.

44.   On March 5, 2010, unbeknownst to Plaintiff, a document titled, 'Assignment

of Shares" **[Exhibit #13]** was effectuated by 'BB' to convey corporate shares

Brodsky v. First American
Summons & Complaint

belonging 'BOB-SHIRL,' to the sole possession and/or ownership of 'BB.'

The, 'Assignment of Shares,' document was neither proofed, acknowledged

or bears the signature and/or stamp of a licensed notary public.  Notably, the

document acting as, '[10]TESTIMONY FROM THE GRAVE,' disjunctively

and/or solitarily conveyed only, **"HIS SHARES,"** meaning, 'BBs,' shares of

'BOB-SHIRL,' to the, 'Bob Brodsky Revocable Trust' **[Exhibit #11]**.  The

document also lacks a [11]corporate seal as required by New York State Real

Property Law 292(a). Schulman Family Enters. v. Schulman, 2014 N.Y.

Misc. LEXIS 3627, Supreme Court, 10th JD, July 31, 2014; 'The other

alternative - that it was transferred by the partnership - also fails. For that to

have occurred, the Articles of General Partnership specifically state that the

conveyance of any asset requires approval by a majority of the partners (§

5.8[A]) and any transfer 80% consent (§ 5.09[C].'  'Any transaction which

has been conducted in violation of the fiduciary duty may be set aside and

the parties returned to their prior status (Rose Ocko Foundation v. Lebovits,

259 AD2d 685, 686 N.Y.S.2d 861 [2d Dept 1999]) and that remedy has been

---

[10] The basic prerequisites of admissibility are relevance, materiality, and competence. In general, if evidence is shown to be relevant, material, and competent, and is not barred by an exclusionary rule, it is admissible. Evid. Code § 351; Fed. Rules Evid. 402.

[11] New York Consolidated Laws, Real Property Law - RPP § 292-a

long recognized. Norwegian-Amer. Securities Corp. v. Schenstrom, 124

Misc 235, 207 N.Y.S. 163 (Sup Ct NY Cty 1924).'

45.    New York Real Property Law § 299 - Acknowledgments and proofs without

the state, but within the United States or any territory, possession, or

dependency thereof:

> The acknowledgment or proof of a conveyance of real property situate in
> this state, if made (a) without the state but within the United States, (b)
> within any territory, possession, or dependency of the United States, or (c)
> within any place over which the United States, at the time when such
> acknowledgment or proof is taken, has or exercises jurisdiction,
> sovereignty, control or a protectorate, may be made before any of the
> following officers acting within his territorial jurisdiction or within that of
> the court of which he is an officer:

> **1.** A judge or other presiding officer of any court having a seal, or the clerk
> or other certifying officer thereof.

> **2.** A mayor or other chief civil officer of any city or other political
> subdivision.

> **3.** A **notary public**.

> **4.** A commissioner of deeds appointed pursuant to the laws of this state to
> take acknowledgments or proofs without this state.

> **5.** Any person authorized, by the laws of the state, District of Columbia,
> territory, possession, dependency, or other place where the
> acknowledgment or proof is made, to take the acknowledgment or proof of
> deeds to be recorded therein.

## IX.        COUNT TWO
## FRAUD IN THE CONVEYANCE OF REAL PROPERTY

46.    Plaintiff re-alleges and incorporates the foregoing allegations as set forth

herein this Complaint.

47.   WHEREFORE, Plaintiff brings this proceeding on behalf of himself.

48.   Both '711 CHESTER' and '730 CHESTER,' two (2) commercial warehouse

      properties, had been jointly purchased by the 'PARTNERs' in 1980 and 1981

      respectively.

49.   On the 12th day of August, 2010, 'BB' allegedly executed a, "[12]Bargain

      and Sale Deed, with covenant."

50.   The, "Bargain and Sale Deed, with Covenant," was issued by, 'FIRST

      AMERICAN,' 333 Earle Ovington Blvd., Uniondale, NY 11553 (a branch

      subsidiary of 'FIRST AMERICAN').

51.   The, 'Bargain and Sale Deed, with Covenant,' allegedly appropriated

      conveyance of ownership of '711 CHESTER' and '730 CHESTER' from,

      'BOB-SHIRL' [Exhibit #13] (grantor) to the, 'Bob Brodsky, surviving spouse

      of Shirley Brodsky as Trustee of the, Bob Brodsky Revocable Trust,' with no

      pecuniary consideration [Exhibit #11].

52.   As notated on, page [15], paragraph [41] hereinabove, 'BB' unlawfully

      conveyed [13]HIS shares of, 'BOB-SHIRL' [Exhibit #13] thereby allegedly

---

[12] A **bargain and sale deed** is in United States real property law, a deed "conveying real property with covenants.

[13] Used to singularly indicate the one or ones belonging to him: In this case it indicates his portion of shares belonging to, "Bob Shirley Realty Corp" exclusive of shares belonging to others.

materializing into a personal asset belonging to, 'BB,' March 5, 2010, five

(5) months prior to a second alleged conveyance annotated in the 'Bargain

and Sale Deed, with Covenant,' dated August 12, 2010 **[Exhibit #6][Exhibit**

**#7].**

53. Most importantly, the unrecognizable signature inscribed on that same

document, bears no notary public signature and/or seal in consonance too,

'New York Real Property Law § 299.'

54. [14]Black's Law Dictionary defines forgery as the "act of fraudulently making

a false document or altering a real one to be used as if genuine." It is a

criminal offense in the U.S., designated as either a felony or a high-degree

misdemeanor. In some states, the charges depend on the details of the crime,

including the dollar amount and/or the nature of the document; forging real

estate deeds generally leads to a higher-level offense.

55. Many fraudulent deeds contain one or more forged details. The grantor or an

authorized representative must sign all real property deeds, so a "false

document" may be a new transfer with a non-authentic signature. A signer

may pose as the property owner and sign the deed in front of a notary.

---

[14] **Black's Law** is the most widely used law dictionary in the United States.

Others may use a completely made-up name or identify themselves as the

owner's personal representative.

56.   <u>NYS Real Property Law § 292</u>, Except as otherwise provided by this article,

such acknowledgment can be made only by the person who executed the

conveyance, and such proof can be made only by some other person, who

was a witness of its execution, and at the same time subscribed his name to

the conveyance as a witness,  "[15]since under New York law the only formal

requirement for recording a conveyance is that it be duly acknowledged or

proved and be accompanied by a certificate thereof."  "the sole statutory

requisite of such acknowledgment is that it must have been made before an

officer who knows, or has satisfactory evidence, that the person making the

acknowledgment is the person who executed the instrument and is described

in it."  Furthermore, "Since these instruments are required to be

acknowledged or proved in a manner similar to a deed, a defective

acknowledgment, though not affecting the validity of the instrument

between the immediate parties, would render it invalid as to third persons

---

[15] Lester Nelson, Conveyancing in New York , 43 Cornell L. Rev. 617 (1958) Available at: http://
scholarship.law.cornell.edu/clr/vol43/iss4/3

without notice," Spraker v. Spraker, 152 Misc. 867, 870, 274 N.Y. Supp.

454, 457 (Sup. Ct., Herkimer County 1933).

57.   NYS Real Property Law § 291; "A conveyance of real property, within the

state, on being duly acknowledged by the person executing the same, or

proved as required by this chapter, and such acknowledgment or proof duly

certified when required by this chapter, may be recorded in the office of the

clerk of the county where such real property is situated, and such county

clerk shall, upon the request of any party, on tender of the lawful fees

therefor, record the same in his said office. Every such conveyance not so

recorded is void as against any person who subsequently purchases or

acquires by exchange or contracts to purchase or acquire by exchange."

58.   NYS Real Property Law § 306; "A person taking the acknowledgment or

proof of a conveyance must endorse thereupon or attach thereto, a certificate,

signed by himself, stating all the matters required to be done, known, or

proved on the taking of such acknowledgment or prove; together with the

name and substance of the testimony of each witness examined before him,

and if a subscribing witness, his place of residence." "Both parties'

admissions in open court that signatures were authentic did not, by itself,

constitute proper acknowledgment under CLS Dom Rel § 236(B)(3), which

proscribes acknowledgment "in the manner required to entitle a deed to be

recorded" (CLS Real P §§ 291 and 306). Matisoff v Dobi, 90 N.Y.2d 127,

659 N.Y.S.2d 209, 681 N.E.2d 376, 1997 N.Y. LEXIS 750 (N.Y. 1997).

"Entitlement of designated officer to take oral acknowledgment of party and

written certification of deed, for purposes of recordation, is a restricted one;

he/she must not take signature unless he/she knows or has satisfactory

evidence that the person making such acknowledgment to him/her is person

described in and who executed such instrument." Cicerale v Cicerale, 85

Misc. 2d 1071, 382 N.Y.S.2d 430, 1976 N.Y. Misc. LEXIS 2120 (N.Y. Sup.

Ct.), aff'd, 54 A.D. 2d 921, 387 N.Y.S.2d 1022, 1976 N.Y. App. Div. LEXIS

14765 (N.Y. App. Div. 2d Dep't 1976).

59.   Plaintiff charges, 'FIRST AMERICAN,' with aiding and abetting the illegal

conveyance of two (2) commercial properties (711 & 730 Chester Street) from

a corporate entity, 'BOB-SHIRL,' to a personal entity known as the, 'Bob

Brodsky Revocable Trust,' [Exhibit #11] thereby conveying official legal

documents that have no acknowledgment, are not proved and bear no

notary public stamp and/or seal in consonance to amongst others, NYS Real

Property Law § 292, NYS Real Property Law § 291, NYS Real Property

Law § 292 and GBS § 1104(a).

60.  'FIRST AMERICAN,' must be charged with unlawfully aiding and abetting

the conveyance of two (2) commercial properties **(711 & 730 Chester Street)**

and be held accountable for the irreparable material harm these actions

caused Plaintiff.  The combined value of the properties at issue are worth in

excess of, 'SEVEN MILLION DOLLARS' ($7,000,000.00).

## X.         COUNT THREE
## FRAUD IN THE CONCEALMENT OF CONVEYANCE OF REAL
## PROPERTY

61.  Plaintiff re-alleges and incorporates the foregoing allegations as set forth

herein of this Complaint.

62.  WHEREFORE, Plaintiff brings this proceeding on behalf of himself.

63.  Both '711 CHESTER' and 730 CHESTER,' two commercial warehouse

properties, had been jointly purchased by the, 'PARTNERs' in 1980 and

1981 respectively.

64.  Swartz v Swartz, 2014 N.Y. Misc. LEXIS 2301, Supreme Court, 10th JD,

May 14, 2014;  'As a general rule, the relief to which a defrauded creditor

is entitled in an action to set aside a fraudulent conveyance is limited to

setting aside the conveyance of the property which would have been

available to satisfy the judgment had there been no conveyance (*see* Joslin v

Lopez, 309 AD2d 837, 765 NYS2d 895 [2d Dept 2003]).'

65.   NY CLS CPLR § 213(8); 'An action based upon fraud; the time within

which the action must be commenced shall be the greater of six years from

the date the cause of action accrued or two years from the time the plaintiff

or the person under whom the plaintiff claims discovered the fraud, or could

with reasonable diligence have discovered it.'

66.   Although haling themselves as, 'EXPERTS,' 'FIRST AMERICAN,'

effectuated the conveyance of two (2), 'Bargain and Sale Deed, with

covenant,' bearing NO acknowledgement, endorsed with NO prove and

bearing NO certificate and/or seal associated with a licensed notary public in

consonance to amongst others,   NYS Real Property Law § 292, NYS Real

Property Law § 291, NYS Real Property Law § 292 and GBS § 1104(a).

67.   'FIRST AMERICAN,' must be charged with unlawful concealment and

aiding and abetting the conveyance of two (2) commercial properties **(711 &**

**730 Chester Street)** that caused irreparable material harm to Plaintiff.  The

value of both properties combined are worth in excess of, 'SEVEN

MILLION DOLLARS' ($7,000,000.00).  The emotional distress caused by

these unlawful actions can never be rectified.

## XI.        COUNT FOUR
## DECEPTIVE ACTS AND PRACTICES UNLAWFUL
## NY CLS GENERAL BUSINESS § 349(a)

68.   Plaintiff re-alleges and incorporates the foregoing allegations as set forth

      herein this Complaint.

69.   WHEREFORE, Plaintiff brings this proceeding on behalf of himself.

70.   Both '711 CHESTER' and '730 CHESTER,' two (2) commercial warehouse

      properties, had been jointly purchased by the Partners in 1980 and 1981

      respectively.

71.   NY CLS GENERAL BUSINESS § 349(a), 'Deceptive acts or practices in

      the conduct of any business, trade or commerce or in the furnishing of any

      service in this state is hereby declared unlawful.'

72.   Although 'FIRST AMERICAN' haling themselves as, 'experts,' unlawfully

      aided and abetted the conveyance of real property with a, 'Bargain and Sale

      Deed, with covenant,' bearing NO acknowledgement, bearing NO prove and

      bearing NO certificate or seal associated with a licensed notary public in

consonance to amongst other things, NY CLS General Business Law §

349(a).

73.   CLS <u>Gen Bus § 349</u> does not require businesses to ascertain consumers'

individual needs, and to guarantee that each consumer has all relevant

information specific to situation; however a, 'scenario is quite different'

where a business alone possesses material information that is relevant to

that consumer and fails to provide such information. Oswego Laborers'

Local 214 Pension Fund v Marine Midland Bank, N. A., 85 N.Y.2d 20, 623

N.Y.S. 2d 529, 647 N.E.2d 741, 1995 N.Y. LEXIS 145 (N.Y. 1995).

74.   It is clear that the legislative purpose of enacting <u>General Business Law</u>

<u>§ 349</u>, was to follow in the steps of the Federal Trade Commission with

respect to the interpretation of deceptive acts and practices outlawed by § 5

of the Federal Trade Commission Act. State by Lefkowitz v Colorado State

Christian College of Church of Inner Power, Inc., 76 Misc. 2d 50, 346

N.Y.S.2d 482, 1973 N.Y. Misc. LEXIS 1430 (N.Y. Sup. Ct. 1973).

75.   <u>N.Y. Gen. Bus. Law § 349</u>, precluding deceptive acts or practices that

mislead consumers in a material way, does not define its materiality but is

modeled after <u>15 U.S.C.S. § 45</u> of the Federal Trade Commission Act,

15 U.S.C.S. § 41 et seq., which prohibits unfair and deceptive acts affecting

commerce, so the materiality prong of a claim under N.Y. Gen. Bus. Law §

349 is evaluated by examining case law interpreting 15 U.S.C.S. § 45.

Bildstein v MasterCard Int'l Inc., 329 F. Supp. 2d 410, 2004 U.S. Dist.

LEXIS 14313 (S.D.N.Y. 2004).  People v. First Am. Corp., 76 A.D.3d 68,

Appellate Division 1st Department, June 8, 2010, 'The Attorney General

was not precluded by federal regulations from pursuing litigation against

Defendants alleging they unjustly enriched themselves by repeated use of

fraudulent, deceptive and illegal business practices in permitting certain

residential real estate appraisers to be influenced by a nonparty mortgage

lender to increase real estate property values on appraisal reports in order to

inflate home prices.'  Frazier v. Priest, 141 Misc. 2d 775, City Ct., November

10, 1988,  'The court held that the lease or sale of real property was subject

to the same treatment as a sale of personal property, and that any lease or

sale to a consumer in New York enjoyed the protection of N.Y. Gen. Bus.

Law § 349.'

## XII.          COUNT FIVE
### REPEATED AND PERSISTENT FRAUD IN VIOLATION OF
### NEW YORK EXECUTIVE LAW § 63(12)

76.   Plaintiff re-alleges and incorporates the foregoing allegations as set

      forth herein this Complaint.

77.   'FIRST AMERICAN,' engaged in repeated and/or persistent fraud in

      violation of Executive Law § 63(12) in the course of its aiding and abetting

      the illegal conveyance of two (2) properties, '711 CHESTER' and '730

      CHESTER' bearing NO licensed notary public endorsement.

78.   'FIRST AMERICAN' engaged in repeated and/or persistent fraud in

      violation of Executive Law § 63(12) by endorsing false statements and/or

      omissions, thereby abrogating its fiduciary duty in consonance to New York

      State Law on each of its applications to engage in the business of furnishing

      title insurance to consumers.

79.   'FIRST AMERICAN,' damaged Plaintiff who is resident in New York State,

      and obtained its' ill-gotten pecuniary remuneration, through repeated and

      persistent fraud in violation of Executive Law § 63(12).

### XIII.            COUNT SIX
### REPEATED AND PERSISTENT ILLEGALITY IN VIOLATION OF
### NEW YORK EXECUTIVE LAW § 63(12)

80.   Plaintiff re-alleges and incorporates the foregoing allegations as set

      forth herein this Complaint.

81.    'FIRST AMERICAN' engaged in repeated and/or persistent illegality in

       violation of N.Y. Executive Law § 63(12) in the course of, aiding and

       abetting the illegal conveyance of real property bearing NO licensed notary

       public endorsement in consonance to New York State Law.

82.    'FIRST AMERICAN,' engaged in repeated and/or persistent illegality in

       violation of N.Y. Executive Law § 63(12) through violations pursuant too

       *inter alia*: (i) General Business Law § 349.

83.    'FIRST AMERICAN' damaged Plaintiff who is resident in New York State,

       and obtained its' ill-gotten pecuniary remuneration, through repeated and

       persistent illegality in violation of N.Y. Executive Law § 63(12).

       **XIV.**          **COUNT SEVEN**
                    **COMMON-LAW FRAUD**

84.    Plaintiff re-alleges and incorporates the foregoing allegations as set

       forth herein this Complaint.

85.    'FIRST AMERICAN,' knowingly effectuated material misrepresentations

       and/or omissions of facts to Plaintiff, when it aided and abetted the illegal

       conveyance of real property bearing NO licensed notary public endorsement,

       as set forth in detail herein.

86.     'FIRST AMERICAN,' was aware at the time when 'BB' effectuated the

        illegal conveyance of real property, with a, 'Bargain and Sale Deed, with

        covenant,' bearing NO acknowledgement, NO proof and NO certificate and/

        or seal bearing a licensed notary public endorsement in consonance to

        amongst others, NYS Real Property Law § 292, NYS Real Property Law §

        291, NYS Real Property Law § 292 and GBS § 1104(a).  Although

        harboring that knowledge did not prevent 'BB' from effectuating these

        misrepresentations and/or false omissions, or alternatively reckless

        incantations which thereby rendered those representations as '*Void ab Initio*.

87.     'FIRST AMERICAN' intended for Plaintiff rely on its misrepresentations

        and/or omissions, at time of conveyance of real property bearing NO

        licensed notary public endorsement.

88.     Plaintiff did in fact rely upon 'FIRST AMERICANs' misrepresentations and/

        or omissions.

89.     By reason of Plaintiffs reliance on 'FIRST AMERICANs'

        misrepresentations and/or omissions of material fact, Plaintiff suffered direct

        and consequential injury.

90.   'FIRST AMERICANs' fraudulent conduct is egregious, as directed towards

Plaintiff, and involved a high degree of moral culpability.

## XV.      COUNT EIGHT
## CONSPIRACY

91.   Plaintiff re-alleges and incorporates the foregoing allegations as set forth

herein this Complaint.

92.   'FIRST AMERICAN,' willingly engaged in a campaign to conspire with

Does 1 through 5, thereby knowingly effectuating material

misrepresentations and/or omissions of facts to Plaintiff, in order to aid and

abet the illegal conveyance of real property bearing NO licensed notary

public endorsement, as set forth in detail herein.

93.   'FIRST AMERICAN' employed these tactics in an effort to aggrandize

profits derived from the sale of title insurance.

94.   'FIRST AMERICAN,' promulgated false or misleading statements directly

too plaintiff to further the objectives of the conspiracy.

95.   Plaintiff was directly and proximately injured by 'FIRST AMERICAN,'

when it conspired with Does' 1 through 5, in an amount to be determined at

trial.

## XVI.      COUNT NINE

## VIOLATION OF THE RACKETEER INFLUENCED
## CORRUPTION ACT (RICO) 18 U.S.C. § 1961 *et seq.*,

96.   Plaintiff re-alleges and incorporates the foregoing allegations as set

forth herein this Complaint.

97.   Each officer, director, executive and manager associated with, 'FIRST

AMERICAN' who schemed to defraud Plaintiff, through a pattern of

racketeering activities within the meaning of, 18 U.S.C. §§ 1961(1),

1961(5), 1961(5) and 1962(c) and used mail or wire facilities, is in

violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud) and are

guilty of violating at least two (2) RICO predicate acts of racketeering.

98.   'FIRST AMERICAN' aided, abetted and committed two predicate acts of

racketeering, 18 U.S.C. §§ 1341 and 1343.  'FIRST AMERICAN,'

effectuated the same methods to fraudulently convey two (2) parcels of

real property bearing NO licensed notary public endorsement.  As evidenced

herein.  A great deal of these illegal activities were effectuated in violation of

the laws governed by the State of Delaware.  Along with telephone, chat and

email meetings, 'FIRST AMERICAN' concomitantly with Does' 1 through

5, hatched and promoted the aforementioned fraudulent scheme by

using the phone, mail and internet to communicate their criminal activities.

99. 'FIRST AMERICAN,' obtained pecuniary remuneration under materially

false or fraudulent pretenses, false representations, false promises and by

furthering an ongoing pattern of concealment and criminality. 'FIRST

AMERICAN' concomitantly with Does' 1 through 5, concealed these

fraudulent activities when they willingly engaged in criminal racketeering

activities to further aggrandize profits at any cost.

100. These RICO predicated acts of racketeering (18 U.S.C. § 1961(1)) include,

but are not limited to:

(a) Mail Fraud: 'FIRST AMERICAN' violated 18 U.S.C. § 1341 by sending

or receiving, or by causing to be sent and/or received, materials via U.S.

mail or commercial interstate carriers for the purpose of executing the

unlawful scheme to fraudulently convey two (2) parcels of real property

bearing NO licensed notary public endorsement.

(b) Wire Fraud: 'FIRST AMERICAN' violated 18 U.S.C. § 1343 by

transmitting and/or receiving, or by causing to be transmitted and/or

received, materials by wire for the purpose of executing an unlawful scheme

to defraud and obtain money from Plaintiff on false pretenses,

misrepresentations, promises, and/or omissions.

101.  Plaintiff implores the court to impose treble damages at three times actual

damages, along with equitable relief for costs associated with this litigation

pursuant to 18 U.S.C. § 1964(c).

### XVII.                COUNT SIX
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

102.  Plaintiff re-alleges and incorporates the foregoing allegations as set forth

herein this Complaint.

103.  WHEREFORE, Plaintiff brings this proceeding on behalf of himself.

104.  Both, '711 CHESTER' and '730 CHESTER,' two commercial warehouse

properties, had been jointly purchased by the 'PARTNERs' in 1980 and 1981

respectively.

105.  The most frequently used definition for intentional infliction of emotional

distress (IIED) is "one who by extreme and outrageous conduct intentionally

or recklessly causes severe emotional distress to another is subject to

liability for that emotional distress and for any bodily harm that results from

it." In other words, if a Defendant intentionally does something truly awful

to a Plaintiff, the Plaintiff can sue for IIED and recover damages simply for

his or her emotional pain and suffering. If the severe emotional distress also

makes the Plaintiff ill or causes some other physical problem, the Plaintiff

can recover damages for that harm as well.

### PLAINTIFFs' DISABILITY

106.   Plaintiff has been found to be disabled by adjudication at the Federal

Courthouse, Social Security Administration, Office of Adjudication and

Review (ODAR), 100 Federal Plaza, Central Islip, New York.  A [v]erdict of

"Fully Favorable" was rendered in June, 2016 and again in July, 2017

[Exhibit #1].

107.   During those hearings, seven (7) board certified physicians gave sworn

testimony in addition to presentation of more than four hundred pages of

verified medical records that concomitantly affirmed Plaintiff as being

fully disabled [Exhibit #1].

108.   [16]Further, many studies have described relationships between psychological

stress and poor outcomes in RA, including disease flares, says Daniel Clauw,

MD, professor of anesthesiology, rheumatology and psychiatry at the

University of Michigan in Ann Arbor (Published by the Arthritis Foundation,

---

[16] The **Arthritis Foundation** is a nonprofit organization that is dedicated to addressing the needs of people living with arthritis in the United States.

Jennifer Davis author). In a Dutch study published the same year in [17]*Annals of the Rheumatic Diseases*, researchers found a correlation between worry, RA symptoms and disease activity.

109. [18]Stress can make your RA worse, so you'll want to take action to keep that from happening. Researchers still don't fully understand the connection between stress and rheumatoid arthritis. The cause may involve substances related to the stress response and inflammation (WebMD Medical Reference Reviewed by David Zelman, MD on March 8, 2018).

110. "[19]Patients commonly report that stress, either physical or emotional, was present or severe when their RA began. This is true in other autoimmune disorders as well. Since the mind-body connection is real, most physicians appreciate the linkage between stress and disease onset or exacerbation." (HSS is the #1 orthopedic hospital in the U.S. This content was written

---

[17] The ***Annals of the Rheumatic Diseases*** is a peer-reviewed medical journal. It is co-owned by the BMJ Group and the European League Against Rheumatism and covers all aspects of rheumatology, including musculoskeletal conditions, arthritis, and connective tissue diseases.

[18] **WebMD** is an American corporation known primarily as an online publisher of news and information pertaining to human health and well-being.[4] The site includes information pertaining to drugs. It is one of the top healthcare websites by unique visitors.

[19] **Hospital for Special Surgery (HSS)** is a hospital in New York City that specializes in orthopedic surgery and the treatment of rheumatologic conditions

or reviewed by HSS physicians who have expert knowledge and experience in

musculoskeletal care).

111.    Plaintiff is currently receiving treatment from, [20]Dr. Jason Faller, [21]Dr. Gary

Schwartz, [22]Dr. Kiran Patel and [23]Dr. Laurence D. Haber, for pain and

suffering caused by the emotional and physical distress caused by the

unlawful actions of 'FIRST AMERICAN' and Does' 1 through 5.

## XVIII.               COUNT SEVEN
### CONSPIRACY TO DEFRAUD

112.    Plaintiff re-alleges and incorporates the foregoing allegations as set forth

herein this Complaint.

113.    WHEREFORE, Plaintiff brings this proceeding on behalf of himself.

114.    Both, '711 CHESTER' and '730 CHESTER,' two commercial warehouse

properties, had been jointly purchased by the, 'PARTNERs' in 1980 and

1981 respectively.

---

[20] **Dr. Jason Faller** is an experienced, board certified Rheumatologist with interests in rheumatoid ... 333 W. 57th Street, Suite 104, New York, **NY** 10019

[21] **Dr. Gary Schwartz**, MD is an interventional pain medicine specialist in **Great Neck** , NY and has been practicing for 12 years

[22]Dr. Patel is board certified in Pain Management and Anesthesiology. She completed both her Interventional Pain Medicine fellowship and Anesthesiology residency at the prestigious Columbia University Medical Center-New York Presbyterian Hospital.

[23] **Dr. Laurence D Haber** is a Neurology Specialist in **Great Neck**, New York

Brodsky v. First American
Summons & Complaint

115. The standard definition of a conspiracy to defraud was provided by [24]Lord

Dilhorne in *Scott v Metropolitan Police Commissioner*, when he said that it

is clearly the law that an agreement by two or more by dishonesty to deprive

a person of something which is his or to which he is or would be entitled and

an agreement by two or more by dishonesty to injure some proprietary right

of his, suffices to constitute the offense of conspiracy to defraud.

116. On August 12, 2010, an attorney "[25]MICHAEL ANGUILO, Esq.," in

conjunction with, 'BB' and 'Sandi Ingber' (**executrix**) and Does' 1 through 5,

employed the expert services of, 'FIRST AMERICAN,' to unlawfully

convey two (2) commercial properties, '711 CHESTER' and '730

CHESTER.' As duly notated herein are numerous passages, establishing the

illegal conveyance of real property by effectuating a, 'Bargain and Sale

Deed, with Covenant,' provided by, 'FIRST AMERICAN.' The two (2)

conveyances of real property bear NO acknowledgement, NO prove and NO

signature, certificate or seal affirming notarization by a licensed notary

---

[24] **Reginald Edward Manningham-Buller, 1st Viscount Dilhorne**, PC (1 August 1905 – 7 September 1980), known as **Sir Reginald Manningham-Buller, Bt**, from 1954 to 1962 and as **The Lord Dilhorne** from 1962 to 1964, was an English lawyer and Conservative politician. He served as Lord Chancellor from 1962 to 1964.

[25] Linkedin, "I am an estate planning attorney with my own firm, Michael Angiulo & Associates LLC and I have spent over twenty-five years preparing Wills & Trusts; advising clients on Elder Law issues; handling Probate matters; dealing with Estate and Gift Tax issues; filing Medicaid Applications; and, representing small business owners."

Summons and Complaint          District of Delaware

public. This unlawful act was intentionally promulgated by the conspirators

to maliciously defraud Plaintiff out of the fruits of his hard labor. Plaintiff

endured years of pain and suffering when he worked night and day to build a

successful business only to have Plaintiffs' most valued assets **(Real Property)**

stolen from him by the conspirators without any forethought of the

irreparable harm inflicted upon him. Mahan v.Suntrust Mortg., Inc., 2015

U.S. Dist. LEXIS 73887, Florida Middle District Court, June 8, 2015; "18

U.S.C. § 1021 is a criminal statute that provides that any person who is

authorized to record a conveyance of Real Property who falsely records such

a conveyance may be fined and/or imprisoned for up to five years."

Excelsior Capital LLC v. Allen, 2012 U.S. Dist. LEXIS 140697, New York

Southern District Court, September 26, 2012; Ariz. Rev. Stat. Ann. §

33-401(A) (emphasis added). Moreover, "Every deed or conveyance of real

property *must be signed by the grantor* and must be duly acknowledged

before some officer authorized to take acknowledgments." *Id.* § 33-401(B)

(emphasis added); *Watts v. Hogan*, 111 Ariz. 536, 537, 534 P.2d 741 (Ariz.

1975) ("All parties having an interest in the land to be conveyed must sign

the instrument of conveyance."). Any transfer of title purporting to convey

the land without the approval of the grantor, as evidenced by the grantor's

signature or that of his agent, is void. *See Crawford v. Williams*, 1 CA-CV

07-0894, 2008 WL 5066207, at *5 (Ariz. Ct. App. Nov. 28, 2008); *In re

Estate of Kominek*, 1 CA-CV 09-0508, 2011 Ariz. App. Unpub. LEXIS 388,

2011 WL 941264, at *5 (Ariz. Ct. App. Mar. 17, 2011); *see also* Ariz. Rev.

Stat. Ann. § 33-420 ("A document purporting to create an interest in, or a

lien or encumbrance against, real property not authorized by statute,

judgment or other specific legal authority is presumed to be groundless and

invalid.").

## XIX.          COUNT EIGHT
### VIOLATION OF 18 U.S.C. § 1028A
### AGGRAVATED IDENTITY THEFT

117.   Plaintiff re-alleges and incorporates the foregoing allegations as set forth

herein this Complaint.

118.   'FIRST AMERICAN' aided and abetted the conveyance of real property

using a fake and/or spurious 'Employer Identification Number **[Exhibit #17]**.'

119.   'BOB-SHIRL' never applied for nor was granted a Federal or New York

State, 'Employer Identification Number' a/k/a 'EIN,' by the Internal

Revenue Service or by the New York State Department of Taxation and

Finance.

120. 'BOB-SHIRL,' [a] c-corporation, was formed for the sole purpose to

function as a shell corporation for two (2) parcels of real Property in

Brooklyn, New York; '711 CHESTER' and '730 CHESTER.'

121. 'BOB-SHIRL' never transacted business, never applied for or was assigned a

bank checking or savings account and never filed a Federal, State or City of

New York Tax Return because it never engendered income or profit.

122. In reference to, Flores-Figueroa v. US, 556 US 646 - Supreme Court 2009;

Justice BREYER delivered the opinion of the Court, 'A federal criminal

statute forbidding "[a]ggravated identity theft" imposes a mandatory

consecutive 2-year prison term upon individuals convicted of certain other

crimes *if,* during (or in relation to) the commission of those other crimes, the

offender "*knowingly* transfers, possesses, or uses, without lawful authority, *a*

*means of identification of another person.*" 18 U.S.C. § 1028A(a)(1)

(emphasis added). The question is whether the statute requires the

Government to show that the defendant *knew* that the "means of

identification" he or she unlawfully transferred, possessed, or used, in fact,

belonged to "another person." 'We conclude that it does.'

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURN**

123.   On August 12, 2010 'BB' proffered a, New York City Real Property Transfer

Tax Return (NYCRPTTR)**[Exhibit #15]**, that as executed bears no date of

signing, no pecuniary consideration, no witness, no proof, acknowledgement

or notary public stipulation by a New York State notary public and no notary

public endorsement stamp (711 CHESTER and 730 CHESTER).

124.   The same 'NYCRPTTR' bears an 'Employer Identification Number, (EIN)'

'11-9220021' allegedly pertaining to, 'BOB-SHIRL' and  'BOB BRODSKY,

SURVIVING SPOUSE OF SHIRLEY BRODSKY.'

125.   'EIN,' 11-9220021 is either 'spurious' or is related to 'Does' 1 through 5 in

consonance to 18 USC § 1028A(a)(1) as notated by Justice Stephen Breyer

in a decision rendered by, ROBERTS, C.J., and STEVENS, KENNEDY,

SOUTER, and GINSBURG, JJ., and SCALIA, J., in which THOMAS, J.,

joined, *post*, pp. 1894-1895; in Flores-Figueroa v. US, 556 US 646 -

Supreme Court 2009.  Compare *United States v. Godin*, 534 F.3d 51 (C.A.1

2008) (knowledge requirement applies to "of another person"); *United States

v. Miranda-Lopez*, 532 F.3d 1034 (C.A.9 2008) (same); *United States v.

Villanueva-Sotelo*, 515 F.3d 1234 (C.A.D.C.2008) (same), with *United*

*States v. Mendoza-Gonzalez,* 520 F.3d 912 (C.A.8 2008) (knowledge

requirement does not apply to "of another person"); *United States v.*

*Hurtado,* 508 F.3d 603 (C.A.11 2007) *(per curiam)* (same); *United States v.*

*Montejo,* 442 F.3d 213 (C.A.4 2006) (same).

**NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE REAL ESTATE TAX RETURN**

126.   On August 12, 2010 'BB' proffered a, 'New York State Department of

Taxation and Finance,' a, 'Combined Real Estate Transfer Tax Return, Credit

Line Mortgage Certificate, and Certification of Exemption from the Payment

of Estimated Personal Income Tax (NYSDTFCEPEPIT)**[Exhibit #16]**,' that as

inscribed bears no date of signing, no pecuniary consideration, no witness,

no proof, acknowledgement or notary public endorsement by a New York

State licensed notary public and no notary public stamp (711 CHESTER and

730 CHESTER).

127.   The same 'NYSDTFCEPEPIT' bears an 'Employer Identification Number,

(EIN)' '11-9220021' inscribed pertaining to both, 'BOB-SHIRL' and 'BOB

BRODSKY, SURVIVING SPOUSE OF SHIRLEY BRODSKY.'

128.   'EIN,' 11-9220021 is either 'spurious' or is attached in some manner to

'Does' 1 through 5 in consonance to 18 USC § 1028A(a)(1) as notated by

Justice Stephen Breyer in a decision rendered by, ROBERTS, C.J., and

STEVENS, KENNEDY, SOUTER, GINSBURG, JJ., SCALIA, J., in which

THOMAS, J., joined, *post,* pp. 1894-1895; in Flores-Figueroa v. US, 556 US

646 - Supreme Court 2009. Compare *United States v. Godin,* 534 F.3d 51

(C.A.1 2008) (knowledge requirement applies to "of another person");

*United States v. Miranda-Lopez,* 532 F.3d 1034 (C.A.9 2008) (same); *United*

*States v. Villanueva-Sotelo,* 515 F.3d 1234 (C.A.D.C.2008) (same), with

*United States v. Mendoza-Gonzalez,* 520 F.3d 912 (C.A.8 2008) (knowledge

requirement does not apply to "of another person"); *United States v.Hurtado,*

508 F.3d 603 (C.A.11 2007) *(per curiam)* (same); *United States v. Montejo,*

442 F.3d 213 (C.A.4 2006) (same).

**NEW YORK STATE - IDENTITY THEFT**

129. The New York State Legislature has taken steps to deal with the burgeoning

crisis of identity theft. General Business Law § 380-s, which is part of

Article 25, the Fair Credit Reporting Act, provides:

**Theft of Identity**. No person, firm, partnership, corporation, or

association or employee thereof shall knowingly and with the intent to

defraud, obtain, possess, transfer, use or attempt to obtain, possess

transfer, or use credit, goods, services or anything else of value in the

name of another person without his or her consent.

130.   At the same time the General Business Law § 380-l was amended to

provide:

'Any person, firm, partnership, corporation, or association whose knowing

and willful violation of section three hundred eighty-s of this article resulted

in the transmission or provision to a consumer reporting agency of

information that would otherwise not have been transmitted or provided, and

any consumer reporting agency or user of information who or which

willfully and knowingly fails to comply with any requirement imposed

under this article with respect to any consumer is liable to that consumer in

an amount equal to the sum of:  (a) Any actual damages sustained by the

consumer as a result of such failure or as a result of a violation of section

three hundred-s of this article;  (b) Such amount of punitive damages as the

court may allow;  and (c) In the case of any successful action to enforce any

liability under this section, the costs of the action together with reasonable

attorney's fees as determined by the court.

**HAS THE PLAINTIFF PLEADED A CAUSE OF ACTION OF PRIMA FACIE
TORT?**

Brodsky v. First American
Summons & Complaint

131.  Although not specifically pleaded by Plaintiff do the facts of this case

establish a cause of action for prima facie tort?  Prima facie tort is often

used as a classification for a cause of action arising from the Plaintiff

suffering the intentional infliction of economic damages without excuse or

justification by the Defendant's actions.  The elements of a cause of action

for prima facie tort are:  (1) the intentional infliction of harm;  (2) that results

in special damages;  (3) without excuse or justification;  (4) by an act or

series of acts that would otherwise be lawful.

### XX.        PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray's for Judgment against

Defendants as follows:

On all Causes of Action Against (Counts) Defendants, and Each

of Them, as Follows:

(A)   That the conveyance of real property belonging to Plaintiff, which was

surreptitiously and unlawfully conveyed to Bob Brodsky, The

Revocable Trust of Bob Brodsky, The Estate of Bob Brodsky and

Sandi Ingber a/k/a Executrix, concomitantly with SBI Properties,

LLC., which was the beneficiary of a largess engendered to it by

inheritance of commercial properties belonging to,'BOB-SHIRL,'

(711 Chester Street, Brooklyn, New York 11236 and 730 Chester Street,

Brooklyn, New York 11236); be set aside and declared, '*Void Ab Initio.*'

All rents unlawfully collected by 'SBI Properties, LLC., from tenants

occupying those commercial properties explicated herein (711

CHESTER and 730 CHESTER), from January 9, 2013 until a date to

be proven at trial; in the sum of approximately $900,000.00 (exact

amount to be proven at trial), plus interest thereon at the rate of 10% per

annum according to proof at trial;

(B)    On all Causes of Action (Counts), against Defendants, Each of Them

as follows:

An amount to be proven at trial as the Court see's fit;

(C)    For Exemplary or Punitive Damages in an amount according to proof

at trial:

(D)    The court must impose an Equitable Lien or Les Pendant on the two

(2) aforementioned commercial properties (711 CHESTER and 730

CHESTER), and each of them, to prevent said beneficiaries of the

Bob Brodsky Estate, from retaining and enjoying the benefits of any

property belonging to Plaintiff;

(E)     That a Temporary Restraining Order be granted Plaintiff enjoining and

restraining the beneficiaries of the Bob Brodsky Estate and its' heirs,

spouses, representatives, attorneys, servants and agents from selling,

transferring, conveying or otherwise disposing of any of the

hereinabove described properties unlawfully conveyed to them;

(F)     Compensatory Damages as the Court see's fit at proof of trial;

(G)     General Damages in an amount to be proven at trial as the Court see's

fit;

(H)     Declaratory Relief, including but not limited to, the following decree's

by this Court that:

(1)     Plaintiff is the prevailing party;

(2)      The beneficiaries have no enforceable secured or unsecured claim

against the properties;

(3)     'FIRST AMERICAN' has no enforceable secured or unsecured claim

against the properties;

(I)     For restitution as allowed by law;

(J)     Recovery of all costs associated with this legal action;

(K)    Damages for the Intentional Infliction of Emotional Distress;

(L)    Damages for the Negligent Infliction of Emotional Distress;

## **PLAINTIFF'S AFFIRMATION**

Plaintiff, Jay Brodsky, under penalty of perjury hereby affirms that all

statements of fact put forth in this Complaint are true to the best of his

knowledge.

Signed this 23rd day of May, 2019 at Great Neck, New York;

_____

Jay Brodsky, Plaintiff, Pro Se